Case 4:22-cv-02395   Document 39   Filed on 04/28/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
April 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HAROLD LOUIS VAUGHN, TDCJ #01222375, §§§§§ Plaintiff, | |
| v. § | CIVIL ACTION NO. H-22-2395 |
| BRIAN COLLIER, *et al.*, §§§§ Defendants. | |

## MEMORANDUM OPINION AND ORDER

Harold Louis Vaughn, an inmate at the Wynne Unit in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ), has filed a complaint under 42 U.S.C. § 1983, (Docket Entry No. 10), with a memorandum in support (*id.* at 11–20). He has also filed a more definite statement of his claims. (Docket Entry No. 16). He alleges that his dreadlocks were cut off in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the United States Constitution. Vaughn represents himself and has leave to proceed without prepaying the filing fee.

The defendants, Bryan Collier (the TDCJ Director), Bobby Lumpkin (the TDCJ Executive Director when the events at issue occurred), and Rodger Bowers (the warden at the Wynne Unit) have moved to dismiss the complaint as moot under Rule 12(b)(1) and 12(b)(c) of the Federal Rules of Civil Procedure. (Docket Entry No. 31). Vaughn has filed a response. (Docket Entry No. 38). Vaughn has also filed a "Pro Se Emergency Motion for a Temporary Restraining Order and Preliminary Injunction" (Docket Entry No. 32) and a "Pro Se Motion Requesting Leave to Amend and Supplement Complaint Using Federal Rule Civil Procedure 15." (Docket Entry No. 37).

Having reviewed the pleadings, the motions, all matters of record, and the applicable law, the court grants the motion to dismiss and dismisses this case. The reasons are explained below.

## I.   Background

Vaughn was incarcerated at the Wynne Unit when the events he alleges occurred. The issue he raises is his dreadlocks. Vaughn describes his religious affiliation as "the Moorish Science Temple of America; Islamism, the old time religion." (Docket Entry No. 16 at 4). He started to grow his hair out in September or October of 2019 after studying religious texts and becoming "enlighten[ed] spiritually." (Docket Entry No. 10 at 14). Vaughn states that his dreadlocks "have ritualistic forms to prayer/meditations." (Docket Entry No. 16 at 4).

In January or February 2022, Warden Bowers required all men at the Wynne Unit who had "naturals, nappy Afro's and dreadlocks" to receive a haircut. (Docket Entry No. 10 at 7, 15; Docket Entry No. 16 at 10). Vaughn alleges that Warden Bowers made it his "personal policy to shear all longer hair individuals who were not Native American" and that the warden took a "personal interest in dreadlocks or Afros." (Docket Entry No. 16 at 10; *see also* Docket Entry No. 10 at 7, 15).

On April 14, 2022, Vaughn received a forced haircut of his dreadlocks from the prison barber, in accordance with Warden Bowers's policy that dreadlocks were no longer allowed. (Docket Entry No. 16 at 4, 6). Vaughn asserts that when he received the haircut, the TDCJ did not have a hair policy or a policy that required "no dreadlocks." (*Id.* at 6). Vaughn claims that his forced haircut was the result of Collier and Lumpkin failing to enact a "valid hair policy in a timely manner[.]" (Docket Entry No. 10 at 18).

In this lawsuit, Vaughn alleges that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act and the United States Constitution by forcing him to

cut off the dreadlocks that he grew as part of his religious practices. Vaughn sues each defendant in both their official and individual capacities. (*See* Docket Entry No. 10 at 14). Vaughn seeks (1) an order requiring the "defendants to cease and desist" misconduct," (2) repeal of the "discriminate/prejudice hair policy," (3) punitive damages, (4) a permanent single cell, and (5) compensatory damages in the amount of "$251.00 per lock." (*Id.* at 7, 19).

The defendants have moved to dismiss the complaint as moot under Rules 12(b)(1) and (c) of the Federal Rules of Civil Procedure.[1] (Docket Entry No. 31). Vaughn has filed a response. (Docket Entry No. 38).

## II. The Standards of Review

### A. The Motion to Dismiss Under Rule 12(b)(1)

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (quoting *Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982)). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court may find lack of subject matter jurisdiction based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint

---

[1] In a previous Memorandum Opinion and Order, the court dismissed the claims against Patrick Coleman, Dustin Wonders, Julia Rodriguez, Joey Burleyson, Garrett Simmons, Jessalyn Capayas, Ismalia Omotosho, Preston Gajan, Lori Smyth, and Donna Black. (Docket Entry No. 17).

3

supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 297 (5th Cir. 2010) (citation omitted). The party seeking to assert jurisdiction bears the burden of proving its existence. *Stiftung*, 603 F.3d at 297 (citation omitted).

When a case becomes moot, the court lacks subject matter jurisdiction. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013). "Although voluntary cessation of a challenged activity does not ordinarily deprive a federal court of its power to determine its legality, courts are justified in treating a voluntary governmental cessation of potentially wrongful conduct with solicitude." *Turner v. Tex. Dep't of Crim. Just.*, 836 F. App'x 227, 229 (5th Cir. 2020) (citing *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). "Such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* (citing *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)). "Government actors in the exercise of their official duties are accorded a presumption of good faith because they are public servants, and without evidence to the contrary, courts assume that formally announced changes to official policy are not mere litigation posturing." *Id.* (citing *Sossamon*, 560 F.3d at 325).

### B. Pleadings by Self-Represented Litigants

In reviewing the pleadings, the court is mindful that Vaughn represents himself. Courts construe self-represented litigants' pleadings under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even under this lenient standard, a self-represented plaintiff must allege more than "labels and conclusions" or a

4

"formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* No matter how well-pleaded the factual allegations may be, they must reveal that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

### III.     Discussion

Vaughn claims violations of his rights under the First Amendment to the United States Constitution and the RLUIPA.[2] "Although imprisonment necessarily limits a prisoner's constitutional rights, the Constitution does not entirely abandon the prisoner at the prison gate." *Mitchell v. Quarterman*, 515 F. App'x 244, 247 (5th Cir. 2012) (per curiam) (citing *Turner v. Safley,* 482 U.S. 78, 84 (1987)). "[P]risoners must be accorded 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." *Mumin v. Phelps,* 857 F.2d 1055, 1056 (5th Cir. 1988) (citing *Cruz v. Beto,* 405 U.S. 319, 322 n. 2 (1972)). Prison officials, however, may place limits on the religious rights of prisoners as long as the regulations are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

"RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 612 (5th Cir. 2008). The RLUIPA provides that

---

[2] Vaughn also purports to bring claims under other amendments to the United States Constitution. (*See* Docket Entry No. 10 at 11–19). The court has reviewed the factual allegations against Collier, Lumpkin, and Bowers. The allegations against them are claims arising under the First Amendment and the RLUIPA. (*See* Docket Entry No. 16 at 10). Because Vaughn does not allege facts that would support a claim against these defendants under the constitutional amendments Vaughn refers to briefly in his memorandum, any claims Vaughn purports to bring under these amendments against these defendants is dismissed.

> No government shall impose a substantial burden on the religious exercise of [an inmate] . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). To prevail on a claim under the RLUIPA, "the plaintiff bears the initial burden of proving that the challenged government action substantially burdens the plaintiff's religious exercise." *DeMoss v. Crain*, 636 F.3d 145, 150 (5th Cir. 2011) (per curiam) (internal quotation marks and citation omitted).

"A governmental action creates a substantial burden on a religious exercise if it truly pressures the offender to significantly modify his religious behavior and significantly violates his religious beliefs." *Turner*, 836 F. App'x at 230 (citing *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). "If the plaintiff meets this burden of proof, the burden shifts to the government to demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *DeMoss*, 636 F.3d at 150 (internal quotation marks and citation omitted).

### A. The Claims for Money Damages

The defendants argue that Vaughn's claims for money damages are not authorized under the RLUIPA and are barred under the defendants' Eleventh Amendment immunity. The defendants are correct. The RLUIPA does not provide for money damages against officials sued in either their official or individual capacities. *See Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011); *Landor v. La. Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 339 (5th Cir. 2023). Only claims for prospective injunctive relief against defendants in their official capacities are available under

6

the RLUIPA. *See McFaul v. Valenzuela*, 684 F.3d 564, 576 (5th Cir. 2012); *Mitchell*, 515 F. App'x at 248.

Vaughn's claim for money damages against the defendants in their official capacities is barred by the Eleventh Amendment. *See Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir.2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.").

Vaughn does not allege a physical injury as a result of the alleged First Amendment violation. As a result, he is not entitled to compensatory damages for emotional or mental injuries under § 1983. *See* 42 U.S.C. § 1997e(e); *Geiger v. Jowers,* 404 F.3d 371, 375 (5th Cir. 2005).

As for Vaughn's claim for punitive damages, although the PLRA does not bar a claim for punitive damages, *see Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007), "[p]unitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Frank v. Parnell*, No. 22-30408, 2023 WL 5814938, at *7 (5th Cir. Sept. 8, 2023) (per curiam) (quoting *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003)). Vaughn has not alleged facts that could show that the defendants acted out of spite or with callous disregard for his rights. Accordingly, Vaughn has not stated a claim for which punitive damages may be granted.[3]

### B.     The Claims for Injunctive Relief

The defendants argue that Vaughn's claim that he cannot wear his hair in dreadlocks is now moot because (1) the current TDCJ grooming policy allows inmates, including Vaughn, to

---

[3] Although the defendants' motion does not address Vaughn's request for punitive damages, the court must dismiss any part of the case that it determines is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

7

grow their hair long, and (2) although the current TDCJ grooming policy does not permit inmates to style their hair in dreadlocks, inmates may seek an exception through the Religious Accommodation Request process. Vaughn sought and has been granted an exception, allowing him to wear his hair in dreadlocks while incarcerated.

In support of their motion to dismiss, the defendants attached a declaration from Eric Guerrero, the then Deputy Division Director of the TDCJ.[4] Mr. Guerrero stated as follows:

> My name is Eric Guerrero. I am over the age of 18, competent to make this declaration, and have personal knowledge of the facts herein stated. I am making this declaration in connection with the above-captioned cause of action. I have worked for the Texas Department of Criminal Justice (TDCJ) since 1994 and I have been employed as the Deputy Division Director in the Correctional Institutions Division (CID) since 2020.
>
> I understand that Harold Vaughn, #01222375, the Plaintiff in this case and an inmate in the custody of the TDCJ, is seeking injunctive relief from this Court in the form of being allowed to grow his hair in dreadlocks or wear his hair in twists in accordance with his religious beliefs.
>
> The TDCJ grooming policy for inmates does not allow inmates to have dreadlocks. However, inmates may request an accommodation to this grooming policy for religious reasons.
>
> On June 1, 2022, TDCJ CID issued Security Memorandum SM-06.16 (rev. 6) regarding inmate grooming. This policy supersedes the policy in place when Mr. Vaughn filed suit and expands a male inmate's ability to grow long hair. Under SM-06.16 (rev. 6) male inmates who meet the eligibility requirements in the policy may grow long hair. Inmates who are ineligible to grow long hair are limited to (1) those with a security precaution designator for escape or attempted escape, (2) those who have been found guilty of a disciplinary offense for concealing contraband, and (3) those who have been found guilty of a disciplinary offense for refusing a valid order to allow a search of the inmate's facial or long hair within the last two years. Eligible inmates may request a religious exemption to the requirements of SM-06.16.
>
> I have reviewed the classification and disciplinary records of Mr. Vaughn. Under SM-06.16 (rev. 6), Mr. Vaughn is eligible to grow his hair long. Additionally, Mr. Vaughn may wear his hair in the form of dreadlocks or in twists

---

[4] Mr. Guerrero has since replaced Lumpkin as the TDCJ's Executive Director.

      as a religious accommodation to TDCJ SM-06.16. This religious accommodation will remain in place for the entirety of Mr. Vaughn's incarceration as long as he does not violate any of the eligibility requirements as listed.

(Docket Entry No. 31-1).

Despite filing a response, Vaughn has not disputed that he is now eligible to grow his hair long and may wear his hair in the form of dreadlocks or twists as a religious accommodation.

Because Vaughn has received the relief he seeks—a religious accommodation to wear his hair in dreadlocks—his claims are dismissed without prejudice as moot.[5] *See Turner*, 836 F. App'x at 229 (affirming the dismissal of an inmate's religious claim when the TDCJ changed prison policy and the inmate had "received what he wanted"); *Molinar v. Lumpkin*, No. 6:22-CV-00006, 2023 WL 6221786, at *3 (S.D. Tex. Sept. 23, 2023) (dismissing an inmate's claim to wear his hair in two braids as an expression of his religious faith when the TDCJ changed the policy and permitted the inmate the relief he sought).[6]

## IV. Vaughn's Motions

Vaughn has filed a "Pro Se Emergency Motion for a Temporary Restraining Order and Preliminary Injunction." (Docket Entry No. 32). Despite the title of the motion,[7] in the filing

---

[5] Claims dismissed for lack of subject matter jurisdiction are dismissed without prejudice. *See Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

[6] Vaughn's request for relief in the form of a permanent single cell is also dismissed. The relief requested by a plaintiff must be likely to remedy the alleged harm suffered. *See Fed. Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1389 (11th Cir. 1989) ("The redressability component addresses the causal connection between the party's injury and the requested relief. Therefore, the party must show that relief from the alleged injury will 'likely' follow a favorable judicial decision.") (internal citations omitted); *Coutu v. Bridgestone Americas, Inc.*, No. 3:17-CV-01492, 2019 WL 6492899, at *3 (M.D. Tenn. Dec. 3, 2019) ("The redressability element asks not whether Plaintiff is likely to receive the requested relief, but whether the Plaintiff's requested relief is likely to remedy the harm.") (citing *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)). Vaughn does not explain how the assignment of a permanent single cell would remedy the alleged violation of his First Amendment rights and rights under the RLUIPA.

[7] "[A] motion's substance, and not its form, controls." *Moody Nat. Bank of Galveston v. GE Life & Annuity Assur. Co.*, 383 F.3d 249, 251 (5th Cir. 2004) (citing *Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir.1996) (en banc)).

9

Vaughn attempts to assert new, additional claims that are not connected to these defendants or the claims he raises in this case. If Vaughn wants to bring new claims to the court's attention, he needs to file a new lawsuit. The "Pro Se Emergency Motion for a Temporary Restraining Order and Preliminary Injunction" is denied.

Vaughn has also filed a "Pro Se Motion Requesting Leave to Amend and Supplement Complaint Using Federal Rule Civil Procedure 15." (Docket Entry No. 37). This motion is denied for two reasons. First, Vaughn has not attached a complete amended complaint to his motion for leave to amend, as previously instructed. (*See* Docket Entry No. 7). Vaughn was warned that a motion filed in violation of this directive would be stricken from the record. (*See id.*). Second, Vaughn states that he seeks leave to amend to add additional claims regarding "obstructist [sic] behavior by disabling the law library app to the securus tablet unit wide." (Docket Entry No. 37 at 1). Vaughn believes the defendants are conspiring to obstruct by disabling the law library app so that he cannot file a response to the motion to dismiss. (*Id.* at 2). Vaughn has now filed a response to the motion to dismiss. The court lacks subject matter jurisdiction because his claim that he could not file a response to the motion to dismiss is moot. The proposed amended complaint does not cure the mootness. The motion to amend and supplement the complaint is denied.

## V.     Conclusion

Based on the above, the court orders:

1. The Motion to Dismiss as Moot Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c) filed by defendants Bryan Collier, Bobby Lumpkin, and Rodger Bowers (Docket Entry No. 31) is granted. Vaughn's claim seeking injunctive relief against these defendants in the form of a religious accommodation to wear his hair in dreadlocks is dismissed without prejudice for lack of subject matter jurisdiction under the mootness doctrine.

2. The "Pro Se Emergency Motion for a Temporary Restraining Order and Preliminary Injunction" filed by Vaughn (Docket Entry No. 32) is denied.

3. The "Pro Se Motion Requesting Leave to Amend and Supplement Complaint Using Federal Rule Civil Procedure 15" filed by Vaughn (Docket Entry No. 37) is denied.

4. Any other pending motions are denied as moot.

5. An order of dismissal is separately entered.

SIGNED on April 28, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge